**UNITED STATE DISTRICT COURT**

**FOR THE MIDDLE DISTRICT OF ALABAMA**

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, and ALABAMA DEPARTMENT OF ENVIRONMENTAL MANAGEMENT, )<br><br>Plaintiffs,<br><br>v.<br><br>WIREGRASS CONSTRUCTION COMPANY, INC.,<br><br>Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Civil Action No. _____ |

**COMPLAINT**

Plaintiff United States of America, by authority of the Attorney General of the United States, acting at the request and on behalf of the Administrator of the United States Environmental Protection Agency ("EPA"), and Plaintiff Alabama Department of Environmental Management ("ADEM"), file this Complaint and allege as follows:

**NATURE OF THE ACTION**

1.      This is a civil enforcement action against Defendant Wiregrass Construction Company, Inc., under Section 309 of the Clean Water Act ("CWA"), 33 U.S.C. § 1319, and under the Alabama Water Pollution Control Act ("AWPCA"), Alabama Code 22-22-1 et seq.

2.      This action alleges violations of the CWA and AWPCA at two separate sites: the Poly Pit Site, an approximately 750-acre property in Macon County, Alabama located on Banks McDade Road, approximately three miles northwest of Shorter, Alabama, near 32.402526° north latitude and 85.991582° west longitude ) ("Poly Pit Site"); and the Trace Pit Site, an approximately 400-acre property north and south of County Road 85, in Deatsville, Autauga County, Alabama, near 32.625° north latitude and 86.426° west longitude ("Trace Pit Site").

3.      In this action, the United States and ADEM allege that Defendant, commencing in November of 2007 and continuing through April of 2018, during the course of sand and gravel mining and processing operations, violated CWA Section 301(a) by discharging dredged or fill material to waters of the United States without CWA Section 404 authorization at the Poly Pit Site.

4.      In this action the Plaintiffs allege that Defendant, commencing in November of 2007 and continuing to the present date, also violated CWA Section 301(a) and Section 22-22-9 of the Alabama Code at the Poly Pit Site by discharging pollutants (other than dredged or fill material) to waters of the United States and waters of the State without a National Pollutant

Discharge Elimination System ("NPDES") permit issued by ADEM, which at all relevant times has been authorized by EPA to administer the NPDES permit program in the State of Alabama pursuant to CWA Section 402.

5.      In this action, the Plaintiffs allege that Defendant, commencing in November of 2007 and continuing to the present date, also violated CWA Section 301(a) and Section 22-22-9 of the Alabama Code at the Poly Pit Site by failing to comply with the conditions of a NPDES permit issued by ADEM.

6.      In this action, the Plaintiffs allege that Defendant, commencing approximately in November 2017 and continuing until the present, during and following the course of sand and gravel processing operations, violated CWA Section 301(a) and Section 22-22-9 of the Alabama Code at the "Trace Pit Site," by discharging pollutants (other than dredged or fill material) to waters of the United States and waters of the State without a NPDES permit issued by ADEM.

7.      In this action, the Plaintiffs allege that Defendant, commencing approximately in November 2017 and continuing until the present, also violated CWA Section 301(a) and Section 22-22-9 of the Alabama Code at the Trace Pit Site by failing to comply with the conditions of a NPDES permit issued by ADEM.

8.      In this action, the Plaintiffs seek:  (a) injunctive relief prohibiting Defendant from further unauthorized discharges, including by complying with any permit issued under Sections 402 or 404 of the CWA, 33 U.S.C. §§ 1342 or 1344; (b) injunctive relief compelling Defendant to restore, remediate, stabilize, and/or mitigate the impacts of the unauthorized discharges; (c) a civil penalty award in favor of the Plaintiffs and against Defendant; and (d) such other relief as the Court may deem appropriate.

**JURISDICTION AND VENUE**

9.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1345, and 1355 and 33 U.S.C. § 1319(b). Pursuant to 28 U.S.C. § 1367(a), this Court has supplemental jurisdiction over ADEM's state law claims under the AWPCA because the state law claims are related to the federal law claims and form part of the same case or controversy.

10.     Venue is proper in this District, i.e., the United States District Court for the Middle District of Alabama, pursuant to 33 U.S.C. § 1319(b) and 28 U.S.C. §§ 1391(b) and 1395 because Defendant conducts business in this District, and the causes of action and CWA violations alleged in this action arose in this District.

11.     The United States has authority to bring this action on behalf of the Administrator of EPA ("Administrator") under Section 506 of the Act, 33 U.S.C. § 1366.  Acting on behalf of the Attorney General of the State of Alabama, the Alabama Department of Environmental Management has the authority to bring this suit in accordance with and pursuant to the provisions of the Alabama Environmental Management Act, Ala. Code §§ 22-22A-1 to 22-22A-17, the Alabama Water Pollution Control Act ("AWPCA"), Ala. Code §§ 22-22-1 to 22-22-14, and the regulations promulgated pursuant thereto..

**PARTIES**

12.     Plaintiffs are the United States of America ("United States") and the Alabama Department of Environmental Management ("ADEM").

13.     Defendant is Wiregrass Construction Company, Inc., an Alabama corporation with a registered office at 2 North Jackson Street, Suite 605, Montgomery, AL 36104 and a corporate office at 1830 Hartford Hwy, Dothan, AL 36301.

4

## STATUTORY BACKGROUND

14.     Section 101(a) of the CWA, 33 U.S.C. § 1251(a), provides that "[t]he objective of this chapter is to restore and maintain the chemical, physical, and biological integrity of the Nation's waters."

15.     Section 301(a) of the CWA, 33 U.S.C. § 1311(a), prohibits the "discharge of any pollutant by any person" without authorization, e.g., except as in compliance with a permit issued by the United States Army Corps of Engineers or an authorized state pursuant to Section 404 of the CWA, 33 U.S.C. § 1344, which applies to discharges of dredged or fill material; or a permit issued by EPA or an authorized state pursuant to Section 402 of the CWA, 33 U.S.C. § 1342, which applies to discharges of pollutants other than dredged or fill material.

16.     Section 502(5) of the CWA, 33 U.S.C. § 1362(5), defines "person" to include a "corporation."

17.     Section 502(6) of the CWA, 33 U.S.C. § 1362(6), defines "pollutant" to include "dredged spoil," "biological materials," "rock," "sand," and "industrial . . . waste discharged into water."

18.     Section 502(12) of the CWA, 33 U.S.C. § 1362(12), defines "discharge of a pollutant" to include "any addition of any pollutant to navigable waters from any point source."

19.     Section 502(14) of the CWA, 33 U.S.C. § 1362(14), defines "point source" to include "any discernible, confined and discrete conveyance . . . from which pollutants are or may be discharged."

20.     Section 502(7) of the CWA, 33 U.S.C. § 1362(7), defines "navigable waters" as "the waters of the United States, including the territorial seas."  Traditional navigable waters (i.e., all waters which are currently used, or were used in the past, or may be susceptible to use in

interstate or foreign commerce, including all waters which are subject to the ebb and flow of the tide); relatively permanent waters connected to traditional navigable waters; and wetlands with a continuous surface connection to such relatively permanent waters (i.e., "adjacent wetlands") are included in this definition. *See Sackett v. EPA*, 598 U.S. 651 (2023).

21.      Section 309(b) of the CWA, 33 U.S.C. § 1319(b), authorizes EPA to commence a civil action for appropriate relief, including a temporary or permanent injunction, against any person that violates Section 301 of the CWA, 33 U.S.C. § 1311(a).

22.      Section 309(d) of the CWA, 33 U.S.C. § 1319(d), subjects any person that violates Section 301 of the CWA, 33 U.S.C. § 1311, to civil penalties.

## GENERAL ALLEGATIONS

### The Sites where the alleged CWA violations occurred

23.      As described in Paragraph 2, above, the alleged CWA violations occurred at two separate sites: the Poly Pit Site and the Trace Pit Site.

24.      For shorthand purposes, this Complaint refers to the Poly Pit Site and the Trace Pit Site collectively as "the Sites."

25.      At all times relevant to the claims asserted by the United States and ADEM in this Complaint, Defendant has controlled the Sites through ownership.

### The Sites' waters and adjacent wetlands

26.      At all times relevant to the claims asserted by the United States and ADEM in this Complaint, a water body known as Cubahatchee Creek has existed at the Poly Pit Site, along with tributaries of Cubahatchee Creek and adjacent wetlands.  Cubahatchee Creek and the tributaries of Cubahatchee Creek are relatively permanent and connect to the Tallapoosa River.

27.    The Tallapoosa River is a traditional navigable water under the CWA and is also under the jurisdiction of Section 10 of the Rivers and Harbors Act.

28.    Cubahatchee Creek flows north through and then from the Site for approximately 1.8 miles before its confluence with the Tallapoosa River.

29.    At all times relevant to the claims asserted by the United States and ADEM in this Complaint, the Poly Pit Site contained wetlands, i.e., areas inundated or saturated by surface or ground water at a frequency and duration sufficient to support, and under normal circumstances did support, a prevalence of trees and other vegetation typically adapted for life in saturated soil conditions.

30.    At all times relevant to the claims asserted by the United States and ADEM in this Complaint, the Poly Pit Site's wetlands were adjacent to, i.e., have a continuous surface connection with Cubahatchee Creek.

31.    Cubahatchee Creek, its relatively permanent tributaries and its adjacent wetlands constitute "waters of the United States" and "navigable waters" within the meaning of Section 502(7) of the CWA, 33 U.S.C. § 1362(7).

32.    At all times relevant to the claims asserted by the United States and ADEM in this Complaint, a water body known as Mortar Creek has existed at the Trace Pit Site, along with tributaries of Mortar Creek and adjacent wetlands.

33.    Mortar Creek is a relatively permanent water that originates upstream of the Trace Pit Site, flows through the Trace Pit Site, and connects to the Coosa River downstream of the Site.

34.    Approximately 11 miles downstream of the Trace Pit Site, Mortar Creek enters the ordinary pool of the impounded Coosa River in R.E Woodruff Lake, a traditional navigable water under the CWA.

35.     At all times relevant to the claims asserted by the United States and ADEM in this Complaint, the Trace Pit Site contained wetlands, i.e., areas inundated or saturated by surface or ground water at a frequency and duration sufficient to support, and under normal circumstances did support, a prevalence of trees and other vegetation typically adapted for life in saturated soil conditions.

36.     At all times relevant to the claims asserted by the United States and ADEM in this Complaint, the Site's wetlands were adjacent to, i.e., have a continuous surface connection with Mortar Creek.

37.     Mortar Creek, its relatively permanent tributaries, and its adjacent wetlandsconstitute "waters of the United States" and "navigable waters" within the meaning of Section 502(7) of the CWA, 33 U.S.C. § 1362(7).

**Defendant's sand and gravel mining and processing activities**

38.     Defendant is a corporation and thus constitutes a "person" within the meaning of Section 502(5) of the CWA, 33 U.S.C. § 1362(5).

39.     At all times relevant to the claims asserted by the United States and ADEM in this Complaint, Defendant has conducted sand and gravel mining activities at the Poly Pit Site.

40.     Defendant has created multiple mining pits and a processing plant at the Poly Pit Site.  The raw sand and gravel materials are strip mined in the pit areas. The excavated material is then moved to the processing plant.  At the processing plant, the mined material is sent through various wet and dry separation processes.  After processing, finished products are stored in outdoor storage piles located the Poly Pit Site until shipment from the Poly Pit Site.

41.     The Poly Pit Site also includes retention ponds that Defendant has used to remove sediment from wastewater and stormwater that is generated by Defendant's mining

activities prior to discharge to Cubahatchee Creek or its tributaries.  The Poly Pit Site has been manipulated by grading, constructing berms, and creating diversion ditches to capture and direct wastewater and stormwater to the retention ponds.  Several of the ponds have designated outfalls, including to Cubahatchee Creek and/or its tributaries.

45.     At all times relevant to the claims asserted by the United States and ADEM in this Complaint, Defendant has conducted sand and gravel processing activities at the Trace Pit Site.

46.     Defendant has operated a processing plant at the Trace Pit Site. At the processing plant, raw sand and gravel mined material is sent through various wet and dry separation processes. After processing, finished products are stored in outdoor storage piles located the Trace Pit Site until shipment from the Trace Pit Site.

47.     The Trace Pit Site also includes retention ponds that Defendant has used to remove sediment from wastewater and stormwater that is generated by Defendant's mining activities prior to discharge to Mortar Creek or its tributaries. The Trace Pit Site has been manipulated by grading, constructing berms, and creating diversion ditches to capture and direct wastewater and stormwater to the retention ponds. Several of the ponds have designated outfalls, including to Mortar Creek and/or its tributaries.

**Defendant's CWA permitting history**

42.     Defendant has never obtained a permit authorizing discharges of dredged or fill material at the Poly Pit Site or the Trace Pit Site pursuant to Section 404 of the CWA, 33 U.S.C. § 1344.

43.     Defendant has obtained a permit relative to discharges of pollutants covered by the NPDES permit program established by Section 402 of the CWA, 33 U.S.C. § 1342 at the Sites.  However, Defendant did not obtain NPDES permit coverage for all discharges at the Poly Pit Site or the Trace Pit Site and did not comply with all conditions of its NPDES permits.

44.    EPA has granted the State of Alabama, through ADEM, authorization to issue NPDES permits pursuant to Section 402(b) of the CWA, 33 U.S.C. § 1342(b).  Under Sections 309 and 402(i) of the CWA, 33 U.S.C. § 1319 and 1342(i), EPA retains concurrent authority with authorized states such as Alabama to enforce NPDES-related CWA violations.

45.    ADEM issued an NPDES Permit (Permit No. AL0078131) to Lambert Materials, LLC on July 31, 2006, to authorize discharges associated with mining activity at the Poly Pit Site (the "Poly Pit NPDES Permit").  On April 25, 2008, after a merger of Lambert Materials, LLC into Defendant, ADEM issued a Permit Modification effecting a transfer of the Poly Pit NPDES Permit to Defendant.  On August 30, 2011, and again on November 1, 2013, ADEM reissued and/or modified the Poly Pit NPDES Permit.  The most recent issuance of the Poly Pit NPDES Permit expired on October 31, 2018 but has been administratively continued by ADEM since that date.

46.    On September 26, 2013, ADEM issued a notice of general permit coverage to Allstate Deatsville, LLC for authorization of mining and materials processing related discharges at the Trace Pit Site under NPDES General Permit No. ALG850043. On February 4, 2014 the transfer of Trace Pit NPDES General Permit coverage from Allstate Deatsville, LLC to Allstate Materials, LLC, was approved by ADEM.  On April 13, 2017, ADEM issued a Notice of General Permit Coverage under renewed General Permit ALG850043 to Allstate Materials, LLC, for discharges associated with mining and processing operations at the Trace Pit Site (2017 Trace Pit NPDES Permit).  On November 8, 2017, ADEM approved the transfer of coverage under the Trace Pit NPDES Permit for discharges associated with mining and processing operations at the Trace Pit from Allstate Materials, LLC to Defendant. Defendant's coverage under the 2017 Trace Pit NPDES Permit has been administratively continued.

10

**COUNT ONE:**

**UNAUTHORIZED DISCHARGES OF DREDGED OR FILL MATERIAL – POLY PIT SITE**

47. The United States and ADEM reallege and incorporate Paragraphs 1 through 52 of this Complaint.

48. During Defendant's operations at the Poly Pit Site, Defendant or persons acting at Defendant's behest, operated excavators, bulldozers, and/or other earthmoving equipment at and throughout the Site.

49. As operated, this equipment constituted a "point source" within the meaning of Section 502(14) of the CWA, 33 U.S.C. § 1362(14).

50. Operation of this equipment resulted in the placement of dredged spoil, biological materials, rock, sand, or other earthen material constituting "pollutants" within the meaning of Section 502(6) of the CWA, 33 U.S.C. § 1362(6), to waters of the United States, including Cubahatchee Creek, its tributaries, and adjacent wetlands.

51. Operation of this equipment involved the mechanized pushing, dragging, or other redepositing of excavated soil material.

52. Operation of this equipment had the effect of replacing one or more portions of waters of the United States with dry land and/or changing the bottom elevation of one or more portions of waters of the United States.

53. Operation of this equipment resulted in the "discharge of any pollutant" within the meaning of Section 301(a) of the CWA, 33 U.S.C. § 1311(a).

54. Defendant violated 33 U.S.C. § 1311(a) at the Site.

55. Defendant has allowed dredged or fill material that had been discharged without authorization to remain in waters of the United States at the Site.

56. Defendant remains in violation of 33 U.S.C. § 1311(a) at the Poly Pit Site.

11

**COUNT TWO:**

**UNAUTHORIZED DISCHARGES OF POLLUTANTS**
**OTHER THAN DREDGED OR FILL MATERIAL**
**(INCLUDING VIOLATIONS OF NPDES PERMIT) AT THE**
**POLY PIT SITE**

57.     The United States and ADEM reallege and incorporate Paragraphs 1 through 52 of this Complaint.

58.     The Poly Pit Site consists of treatment ponds, treatment pond levees, additional ponds, berms, emergency spillways, ditches, rills, gullies, and/or other conduits or channels, and the manner in which Defendant used them means that they constituted "point sources" within the meaning of Section 502(14) of the CWA, 33 U.S.C. § 1362(14).

59.     During Defendant's operations at the Poly Pit Site, Defendant violated various requirements and conditions of the 2013 Poly Pit NPDES Permit.  For example, Defendant violated the requirement in Part II.A.1. of the 2013 Poly Pit NPDES Permit to "at all times operate and maintain all facilities and systems of treatment and control (and related appurtenances) which are installed or used by the Permittee to achieve compliance with the conditions of this Permit." During Defendant's operations at the Poly Pit site, berms and dams/levees at various times had not been built in accordance with the Permit and associated plans, berms and dams/levees were not properly maintained, and waters of the state identified prior to mining were not adequately protected with setbacks/buffers. Therefore, Defendant failed to operate and maintain all systems of treatment and control in violation of Part II.A.1of the 2013 Poly Pit NPDES Permit.

60.     During Defendant's operations at the Poly Pit Site, effluent from previously mined areas flowed without appropriate treatment into Cubahatchee Creek and its tributaries and their adjacent wetlands through one or more outfalls not covered under the 2013 Poly Pit NPDES

Permit in violation of Permit Part II.D.1.f, which provides that "the discharge of a pollutant from a source not specifically identified in the permit application for this Permit and not specifically included in the description of an outfall in this Permit is not authorized and shall constitute noncompliance with this permit."

61.     NPDES permittees must comply with all conditions of their NPDES permits, and any noncompliance with a permit constitutes a violation of the CWA and the AWPCA. *See* CWA Section 309(a), (b), and (d), 33 U.S.C. § 1319(a), (b), and (d).

62.     Defendant's failures to comply with all conditions of the 2013 Poly Pit NPDES Permit constitute violations of the CWA and the AWPCA.

63.     Defendant discharged untreated wastewater containing pollutants from point sources to waters of the United States at locations not authorized by an NPDES permit, in violation of 33 U.S.C. § 1311(a), Ala. Code § 22-22-9(i)(3), and ADEM Admin Code rs. 335-6-6-.03, -.04.

**COUNT THREE:**

**UNAUTHORIZED DISCHARGES OF POLLUTANTS
OTHER THAN DREDGED OR FILL MATERIAL
(INCLUDING VIOLATIONS OF NPDES PERMIT) AT THE
TRACE PIT SITE**

64.     The United States and ADEM reallege and incorporate Paragraphs 1 through 52 of this Complaint.

65.     During the Defendant's operation of the Trace Pit Site, Defendant conducted processing operations that washed and sorted raw mined sand and gravel material and generated process wastewater that was discharged to waters of the United States and waters of the State through conduits or channels and treatment ponds, and the manner in which Defendant used these features means that they constituted "point sources" within the

13

meaning of Section 502(14) of the CWA, 33 U.S.C. § 1362(14).

66.     During Defendant's operations at the Trace Pit Site, Defendant violated various requirements and conditions of the 2017 Trace Pit NPDES Permit.  For example, Defendant violated the requirement in Part IV.A.2. of the 2017 Trace Pit NPDES Permit to properly implement, maintain and update the facility's Pollution Abatement Plan ("PAP") as there were discrepancies between the March 2020 PAP and the conditions at facility, including lack of berms where specified in the PAP and a failure to conduct needed pond maintenance.

67.     During Defendant's operations at the Trace Pit Site, effluent from processing operations was discharged into ponds that were constructed in waters of the United States and waters of the State for treatment without any NPDES permit authorization for the discharge into those waters.  This violated Part V.G.5 of the 2017 Trace Pit NPDES Permit which provides that the discharge of wastewater "not identified specifically in the description of an outfall in the NOI is not authorized by this Permit."

68.     NPDES permittees must comply with all conditions of their NPDES permits, and any noncompliance with a permit constitutes a violation of the CWA. See CWA Section 309(a), (b), and (d), 33 U.S.C. § 1319(a), (b), and (d).

69.     Defendant's failures to comply with all conditions of the 2017 Trace Pit NPDES Permit constitute violations of the CWA and AWPCA.

70.     Defendant discharged untreated wastewater containing pollutants from point sources to waters of the United States at locations not authorized by an NPDES permit, in violation of 33 U.S.C. § 1311(a)., Ala. Code § 22-22-9(i)(3), and ADEM Admin Code rs. 335-6-6-.03, -.04.

## REQUESTS FOR RELIEF

The United States and ADEM respectfully requests that this Court grant the following relief:

A. Injunctive relief prohibiting Defendant from further unauthorized discharges, including by complying with any permit issued under Sections 402 or 404 of the CWA, 33 U.S.C. §§ 1342 or 1344;

B. Injunctive relief compelling Defendant to restore, remediate, stabilize, and/or mitigate the impacts of the unauthorized discharges;

C. A civil penalty award against Defendant; and

D. Such other relief as the Court may deem appropriate.

Respectfully submitted,

ADAM R. F. GUSTAFSON
Acting Assistant Attorney General
United States Department of Justice
Environment and Natural Resources Division

*/s Martha C. Mann*

Dated:  July 12, 2026

MARTHA MANN
Trial Attorney
United States Department of Justice
Environment and Natural Resources Division
Environmental Defense Section
P.O. BOX 7611
Washington, DC 20044-7611
martha.mann@usdoj.gov

(202) 514-2664


Of counsel:


PAUL SCHWARTZ
Associate Regional Counsel
United States Environmental Protection Agency, Region 4
Atlanta, GA

MELISSA RAACK
Attorney-Advisor
United States Environmental Protection Agency
Office of Enforcement and Compliance Assurance
Washington, DC


*Counsel for Plaintiff United States of America*

*Counsel for Alabama Department of Environmental Management:*

Dated: 6-8-26

ANTHONY TODD CARTER
(AL Bar ID  No. 2609-R45A)
General Counsel
Alabama Department of Environmental
 Management
1400 Coliseum Boulevard
Montgomery, Alabama  36110
Telephone: 334-271-7855

Dated: 6-8-26

CARRIE BLANTON
(AL Bar ID No. 1198-I70T)
Assistant Attorney General
Alabama Department of Environmental
 Management
1400 Coliseum Boulevard
Montgomery, Alabama  36110

17